UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ALEX ALFONSO SALAVERRIA,

                Plaintiff,

-against-

AMERICAN AIRLINES INC.; ALASKA AIRLINES GROUP,

                Defendants.

21-CV-9272 (LTS)

ORDER OF DISMISSAL

LAURA TAYLOR SWAIN, Chief United States District Judge:

      Plaintiff, who is appearing *pro se*, brings this action alleging that American and Alaska Airlines violated his rights by participating in unwarranted surveillance of him and disclosing his personal information. By order dated March 15, 2022, the Court granted Plaintiff's request to proceed *in forma pauperis* (IFP), that is, to waive the filing fees. For the reasons set forth in this order, the Court dismisses the action.

## STANDARD OF REVIEW

      The Court must dismiss an IFP complaint, or portion thereof, that is frivolous or malicious, fails to state a claim on which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B); *see Livingston v. Adirondack Beverage Co.*, 141 F.3d 434, 437 (2d Cir. 1998). The Court must also dismiss a complaint when the Court lacks subject matter jurisdiction. *See* Fed. R. Civ. P. 12(h)(3). While the law mandates dismissal on any of these grounds, the Court is obliged to construe *pro se* pleadings liberally, *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009), and interpret them to raise the "strongest [claims] that they *suggest*," *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (internal quotation marks and citations omitted) (emphasis in original).

A claim is frivolous when it "lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 324-25 (1989), *abrogated on other grounds by Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007); *see also Denton v. Hernandez*, 504 U.S. 25, 32-33 (1992) (holding that "finding of factual frivolousness is appropriate when the facts alleged rise to the level of the irrational or the wholly incredible"); *Livingston*, 141 F.3d at 437 ("[A]n action is 'frivolous' when either: (1) the factual contentions are clearly baseless . . . ; or (2) the claim is based on an indisputably meritless legal theory.") (internal quotation marks and citation omitted).

## BACKGROUND

Plaintiff, a resident of Whittier, California, brings this action against American Airlines Inc. and Alaska Airlines Group, asserting violation of his rights under *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971), the Racketeer Influenced and Corrupt Organizations Act (RICO), 42 U.S.C. § 1983, and state law.[1] He seeks money damages.

The complaint is not a model of clarity and has no apparent connection to New York or the Southern District of New York. The Court has gleaned the following information from the complaint. Federal agents from the United States Department of Homeland Security in coordination with the Los Angeles Police Department have illegally surveilled Plaintiff and retrieved or received his private information from Defendants. The federal agents have also stolen his mail, other confidential documents, and his medications for treatment of his HIV condition. Under the "direct involvement" of Governor Gavin Newsom of California, law

---

[1] Plaintiff filed this same complaint in the United States District Court for the District of Columbia. On November 24, 2021, that court dismissed the case as "misdirected" because it was captioned for the Southern District of New York. *See Salaverria v. American Airlines Inc.*, No. 21-CV-2949 (D. D.C. Nov. 24, 2021).

2

enforcements agents from various agencies have also illegally surveilled and prosecuted Plaintiff and obtained his private information from the airline carriers. (ECF 1, at 3.)[2] Plaintiff

> has noticed many "irregularities" through the years, where his luggage was continuously being screened "SCREENED" by HOMELAND SECURITY with no reason what so ever unless they were looking for "other matters" that would prove a pattern of ILLEGAL SURVEILLANCE under other PRIVATE AFFAIRS OF PLAINTIFF SALAVERRIA.

(*Id*.)

Plaintiff has been an elite member of both American and Alaska Airlines' mileage programs for many years. He has "extensive experience of flying from an early age," has always been "a well behaved passenger respecting all aspects of the rule of law," and has regularly been upgraded to first class. (*Id*.) On September 20, 2021, on an American Airlines flight from Chicago to Charlotte, while in the first class cabin, Plaintiff noticed an agent who was "trying 'too hard' to dress up and appear 'as if' he belonged in that part of the aircraft." (*Id*. at 4.) The agent's "hands gave his identity away immediately" and Plaintiff deplaned that flight "due to his PRIVACY being violated." (*Id*.) The presence of the unidentified agent "confirm[ed] the illegal disclosure and involvement of ALASKA AIRLINES (Ticket Agent Issuer), AMERICAN AIRLINES (CARRIER), and THIRD PARTY (LAW ENFORCEMENT): LEGAL TEAM." (*Id*.) Plaintiff informed Anthony Gallagher, a member of security staff at Ohara International Airport in Chicago, of his observations, and Gallagher "will be called to testify for this case. (*Id*.) American Airlines is "responsible for the loss of $17,500 USD of HIV Medications lost and RACKETEERING ENTERPRISE under 42 U.S.C. 1961(a) with THIRD PARTY LAW ENFORCEMENT." (*Id*. at 5.)

---

[2] Page numbers refer to those generated by the court's electronic filing system. To the extent possible, the Court quotes the complaint verbatim. All emphasis, font, capitalization, and errors are therefore in the original.

A "similar scenario" played out on December 30, 2019, on a flight from Seattle to Los Angeles on Alaska Airlines. (*Id*.) The airline "broke the CONDITIIONS OF CARRIAGE on that trip that was never completed to FINAL DESTINATION and PLAINTIFF was forced to stay in SEATTLE until CALIFORNIA PRIVACY ACT went into effect on January 1, 2020." (*Id*.)

Plaintiff makes several references to an incident report,[3] which he attaches to the complaint, in which he claimed that Alaska Airlines and unidentified agents invaded his privacy in Kailua-Kona, Hawaii, and Seattle on December 23 and 24, 2019. Plaintiff describes the following events in the report. On the morning of December 23, 2019, he went to the Kona Airport for a flight to Los Angeles. After checking in his luggage, he took a taxi to Kona Coffee Roasters outside the airport. While in the taxi, he "noticed several vehicles, and several people as if [he] was 'under surveillance.'" (ECF 1-1, at 2.) When Plaintiff arrived at Kona Coffee, he was monitored by people at two different tables, including a female cyclist who "had glasses that had a small screen attached to it for visual communication." (*Id*.) Plaintiff overheard the people at the two tables talking about him and referring to a conversation he had with an acquaintance the day before, and he then realized that the conversation had been recorded or monitored without his consent. Plaintiff also saw other vehicles coming in and out of the complex and realized he was being monitored and followed by unidentified persons.

Plaintiff returned to Kona Airport, where agents monitored his progress throughout the airport. Because he had left some of his medications behind, he decided not to take the flight, and

---

[3] It is unclear to whom Plaintiff submitted this incident report. The report indicates that copies were sent to the following: Permanent Mission of El Salvador to the United Nations; Embassy of El Salvador; Office of Human Rights to the United Nations; Office of Civil Rights and Civil Liberties, Department of Homeland Security; the New York Times; the Washington Post; the Los Angeles Times; the Miami Herald; Honorable Nancy Pelosi, Speaker of the House of Representatives, U.S. Congress; Maria Elsie Salaverria Horcasitas; and MSNBC. (ECF 1-1, at 6.)

4

instead obtained a standby ticket from Kona to Seattle. At the ticket counter, he overheard an agent describing his luggage, and another questioned him on the name of the hotel where he left his medications. At the pick-up taxi location, the same taxi that had previously transported Plaintiff to Kona Coffee drove up. Plaintiff "simply stated: I will report this situation," and took a second taxi. (*Id*. at 3.) The second taxi driver "seemed very vigilant," and as they got closer to Plaintiff's destination, the driver started to use his cell phone. At that point, Plaintiff stated, "It is illegal to use your cell phone and drive so stop it immediately." (*Id*.) When Plaintiff was dropped off, he overheard someone on the taxi radio say, "He can go." (*Id*.) Plaintiff "**assume[s] they then realized as [he] was aware of what was going on there were serious violations in this matter that can constitute legal action against anyone involved**." (*Id*.)

When Plaintiff returned to Kona Airport, he spoke to a supervisor/manager, who apologized for any inconvenience he had, but "this did not take away the fact '**ALASKA AIRLINES**' was providing confidential information to a '**third party**.'" (*Id*. at 4.) Plaintiff took the red-eye flight from Kona to Seattle and had "no major incidents, but he "continued to be very vigilant in all of [his] surroundings." (*Id*.)

Plaintiff arrived in Seattle the next morning, on Christmas Eve, and was transported on a bus to the main terminal for a flight from Seattle to Los Angeles. Because he "was completely sure 'someone' was physically informing a 'third party' of [his] travel itinerary" – which would constitute a breach of contract between him and the airline − he instead decided to meet up with a local friend. Upon returning to the Seattle airport and checking in for his flight, he "odd[ly]" could not get a simple upgrade, but when the counter agent spoke to someone in the back office, he was upgraded to first class. (Id.) On the flight, towards the end of the boarding process, a woman sat in the seat next to Plaintiff and "**in that moment since [he] considered this 'too**

coincidental' [he] decided to deplane the aircraft and decided not to fly that evening to further protect personal interests at hand." (*Id*. at 5.) Plaintiff believes that the events described in the report "constitute[] personal harassment and a direct threat to [his] safety and life." (*Id*.)

## DISCUSSION

Plaintiff's complaint, when read with the "special solicitude" due *pro se* pleadings, *Triestman*, 470 F.3d at 474-75, fails to allege any facts suggesting that he has a plausible legal claim. Although Plaintiff cites to *Bivens*, Section 1983, and RICO, and numerous state laws for relief, the Court cannot identify any legal basis for Plaintiff's claims against American and Alaska Airlines. Section 1983 provides redress for a deprivation of federally protected rights by persons acting under color of state law. 42 U.S.C. § 1983; *Flagg Bros., Inc. v. Brooks*, 436 U.S. 149, 155-57 (1978). A *Bivens* claim is brought against federal actors for deprivation of certain federally protected rights. *See Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009) ("[*Bivens*] is the federal analog to suits brought against state officials under [Section 1983].") As both American and Alaska Airlines are private parties, and Plaintiff does not allege any plausible facts suggesting concerted action between the airlines and state or federal officials, he fails to state claims under either Section 1983 or *Bivens*.

The civil RICO enforcement provision states that " [a]ny person injured in his business or property by reason of a violation of [18 U.S.C. § 1962] . . . may sue . . . in any appropriate United States district court and shall recover threefold the damages[.]" 18 U.S.C. § 1964(c). As Plaintiff does not allege facts showing that he was injured in his business or property because the defendants "agreed to form and associate themselves with a RICO enterprise and that they agreed to commit two predicate acts in furtherance of a pattern of racketeering activity in

connection with the enterprise," he also fails to state a RICO claim. *Cofacredit, S.A. v. Windsor Plumbing Supply Co.,* 187 F.3d 229, 244 (2d Cir. 1999).

Plaintiff's factual allegations are largely incoherent, irrational, or wholly incredible. *See Denton*, 504 U.S. at 33. The Court therefore dismisses Plaintiff's complaint as frivolous because it lacks a basis in law or fact. *See Neitzke*, 490 U.S. at 324-25; *Livingston*, 141 F.3d at 437.

District courts generally grant a *pro se* plaintiff an opportunity to amend a complaint to cure its defects, but leave to amend is not required where it would be futile. *See Hill v. Curcione*, 657 F.3d 116, 123-24 (2d Cir. 2011); *Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir. 1988). Because the defects in Plaintiff's complaint cannot be cured with an amendment, the Court declines to grant Plaintiff leave to amend and dismisses the action as frivolous. *See* 28 U.S.C. § 1915(e)(2)(B)(i).

## CONCLUSION

Plaintiff's complaint, filed IFP under 28 U.S.C. § 1915(a)(1), is dismissed as frivolous pursuant to 28 U.S.C. § 1915(e)(2)(B)(i). The Clerk of Court is directed to terminate any other pending matter in this case.

The Court certifies under 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith, and therefore IFP status is denied for the purpose of an appeal. *See Coppedge v. United States*, 369 U.S. 438, 444-45 (1962).

SO ORDERED.

Dated:  March 25, 2022
        New York, New York

                                                    /s/ Laura Taylor Swain
                                                    LAURA TAYLOR SWAIN
                                                    Chief United States District Judge